UNITED STATES of America

v.

**Wendell Archibold BUSH, et al.**

**Crim. No. 91–310 GG.**

United States District Court,
D. Puerto Rico.

April 28, 1992.

Jorge E. Vega Pacheco, Asst. U.S. Atty., Hato Rey, P.R., for U.S.

Peter J. Satz, Old San Juan, P.R., for Angel Valencia.

Joseph C. Laws, Old San Juan, P.R., for Wendell Archibold–Bush.

Irma Valdejulli, San Juan, P.R., for Jhon Wilman Franco.

Wilfredo Rios–Mendez, Caguas, P.R., for Valdemar Nuñez.

Mariangela Tirado–Vales, Hato Rey, P.R., for Humberto Buelvas–Julio.

William Marini, Santurce, P.R., for Otto Archibold Newball.

Milton Rua, Old San Juan, P.R., for Emilio Castaño Romero.

Juan E. Alvarez, Old San Juan, P.R., for Norbelto Yepes Gutierrez.

## OPINION AND ORDER

GIERBOLINI, Chief Judge.

Defendants filed a joint motion for suppression of evidence and/or dismissal of indictment, (hereafter "motion to suppress"), on December 17, 1991. The United States filed a response on January 7, 1991. On January 17, 1991 we referred this case to the magistrate for a report and recommendation as to the disposition of defendants' motion.

The magistrate conducted a February 24, 1992 hearing. Thereafter, the magistrate issued his report on March 2, 1992 in which he recommended that defendants' motion be DENIED.

We have made a *de novo* review of the motion, its opposition, the magistrate's report and recommendation, the objections to such report, and the responses to those objections. After our independent review, we find ourselves in basic agreement with the magistrate's report and accordingly ADOPT its ultimate recommendation that defendants' motion to suppress be DENIED. While we find the report and recommendation well-reasoned and generally adopt its analysis, we choose to further elaborate on several issues raised by the magistrate's report.

## BACKGROUND

Defendants claim that the U.S. Navy warship, the USS HERCULES, intentionally and without prior warning rammed the Venezuelan vessel, ARPON, while the ARPON was navigating on the high seas. Defendants acknowledge that the U.S. Coast Guard cutter, OCRACOKE, obtained permission from the Venezuelan government prior to boarding, to search the ARPON and seize any illegal contraband aboard. Defendants allege that the Venezuelan government's consent to search the ARPON is invalid, since the consent was obtained without first informing the Venezuelan government that a U.S. naval ship had rammed the ARPON and rendered the vessel inoperable. Defendants allege that since the U.S. did not acquire jurisdiction over the ARPON under international law and the Convention on the High Seas, the subsequent search of the ship and seizure of the marijuana was thus illegal, and we should grant their motion to suppress.

The United States version of the facts, unsurprisingly, differs from that of defendants. The government claims that defendants' vessel, the ARPON, in fact rammed the USS HERCULES, and offers taped footage of the incident recorded by U.S. Customs. The government alleges that the Coast Guard observed that the vessel bore the name of ARPON, that the homeport of La Vela (Venezuela) appeared engraved on its stern and that the vessel was not flying any flags. The U.S. claims that without boarding the ARPON, the Coast Guard spoke with its crew and learned that the ship was a Venezuelan registered boat with eight crew members aboard, who the master claimed to be Venezuelan citizens. The government asserts that upon further questioning, the ARPON's master stated that the ship possessed no papers for the crew, their last port of call had been Cartagena, Columbia, and their next port of call would be Aruba to offload marijuana.

The U.S. claims that after verbally confirming the ARPON's nationality, the Coast Guard sought and received a statement of no objection (SNO) from the Venezuelan government to board and search the ARPON to enforce U.S. laws. The government alleges that Coast Guard personnel boarded the ARPON only after first obtaining the SNO from Venezuela. Upon boarding, the Coast Guard found 2984.1 kilograms of marijuana, and 5 kilograms of hashish oil in the ship's cargo hold.

Defendants do not deny that plaintiff had a SNO from Venezuela prior to boarding. Defendants however claim that the Venezuelan government's SNO should be

considered null and void since Venezuela was not duly informed of the illegal method by which its vessel was stopped in the high seas, i.e. the alleged ramming of the ARPON by the USS HERCULES.

The magistrate found after examining the video recording that the tape did not support defendants' position that the ARPON was purposely rammed by the U.S. naval ship. The magistrate also noted that defendants' counsel admitted at the hearing that the collision between the ships may have been unintentional. The defendants urge us to view the videotape, so that we may observe that it was the "giant 'Hercules'" that rammed the "small 'Arpon'".

However enticing the proposition of leisurely retiring to the projection room to view the video footage, and utilizing Justice Stewart's method of judicial decision-making in obscenity cases; *See Jacobellis v. Ohio*, 378 U.S. 184, 197, 84 S.Ct. 1676, 1683, 12 L.Ed.2d 793 (1964) ("I know it when I see it ..."); we can resolve the ultimate legal issues here without the necessity of deciding whether HERCULES in fact attacked ARPON. Assuming arguendo, that the U.S. ship did in fact ram the ARPON, we find that absent a proven violation of the criminal defendants' Fourth Amendment rights, the defendants otherwise lack standing to raise any alleged violations of international law arising out of the incident. Defendants have failed to show alternate grounds for the proposed remedies contained in their motion to suppress, other than the alleged violations of international law.

We likewise find no violation of U.S. domestic law. The Venezuelan government's SNO was a valid one, and gave the Coast Guard jurisdiction to board the ARPON and seize the marijuana found there.

## FOURTH AMENDMENT

After reviewing the evidentiary record we agree with the magistrate that defendants have failed to raise a Fourth Amendment claim. Although our Circuit has found that the exclusionary rule is an appropriate remedy for searches by American agents on the high seas which violate the Fourth Amendment, *United States v. Hensel*, 699 F.2d 18, 24 (1st Cir.1983); the Supreme Court has held that not all searches which lack statutory authority or contravene administrative regulations, automatically invoke the exclusionary rule. *Id.* 699 F.2d at 29; *citing United States v. Caceres*, 440 U.S. 741, 755, 99 S.Ct. 1465, 1473, 59 L.Ed.2d 733 (1979) (involving violation of IRS regulations); and *United States v. Giordano*, 416 U.S. 505, 524–29, 94 S.Ct. 1820, 1831–33, 40 L.Ed.2d 341 (1974) (involving lack of statutory authority for phone wiretap).

The Supreme Court made clear in *Katz v. United States*, 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967) (Harlan, J. concurring 1967), that not all violations of privacy rights enjoy Fourth Amendment protection, but only reasonable expectations of privacy, i.e. those that "society is prepared to recognize as 'reasonable'". *Id.* Circuit courts, including our own, have noted the reduced expectation of privacy that crew members sailing on the high seas have, when compared to the expectation of privacy one has in a land-based home. *United States v. Pringle*, 751 F.2d 419, 423 (1st Cir.1984). *See also United States v. Peterson*, 812 F.2d 486, 494 (9th Cir.1987) ("[I]t being well settled that the crew has no legitimate expectation of privacy in the cargo hold of a vessel."); and *United States v. Reeh*, 780 F.2d 1541, 1546 (11th Cir.1986).

Defendants here have not even alleged, much less proven, a Fourth Amendment violation. Thus we need not ultimately determine if defendants had a legitimate, albeit lessened, expectation of privacy enjoying Fourth Amendment protection, which was abridged by the Coast Guard's search of the ARPON and subsequent seizure of the marijuana aboard the vessel.

## INTERNATIONAL LAW

Defendants allege that the USS HERCULES's ramming of the ARPON, violated the rule of international law—that ships flying the flag of a recognized nation are immune from interference on the high seas by ships of nations other than those of

the nation of registry. Defendants further assert that since the interception of the ARPON by the USS HERCULES was against international law, the subsequent granting of permission by the Venezuelan government to board the ship cannot cure the initial illegality, and cannot grant jurisdiction to the U.S. over a foreign vessel illegally stopped.

Defendants cite no cases in support of this argument in their motion to suppress, and only cite one case in their opposition to the magistrate's report, *United States v. Maynord*, [sic] 888 F.2d 918 (1st Cir.1989), a case which we find distinguishable below. The failure of defendants to allege a Fourth Amendment violation is fatal to their motion to suppress, since our Circuit finds that the principles of international law, regarding freedom of navigation, are designed to protect the rights of foreign sovereigns, not the privacy rights of individual sailors. *Hensel*, 699 F.2d at 30, *quoting with approval United States v. Cadena*, 585 F.2d 1252, 1261 (5th Cir.1978) (" '[T]here is no basis for concluding that violation of these international principles must or should be remedied by application of the exclusionary rule or by dismissal of the indictment unless Fourth Amendment interests are violated.' ").

Even assuming for argument's sake that the USS HERCULES intentionally rammed the ARPON, and that such action violated international law, the criminal defendants here have no standing to raise such an argument, only the foreign nation, Venezuela, has standing. *Hensel*, 699 F.2d at 30 ("[Defendants are] not entitled to invoke the exclusionary rule on [their] own behalf, for any violation of international law invaded not [their] rights but rather the rights of [Venezuela]. The rule of international law in the case at bar is a rule designed to secure peace among nations, not to protect the privacy of individuals."); *Accord United States v. Maynard*, 888 F.2d 918, 926–27 (1st Cir.1989). *See also Peterson*, 812 F.2d at 492; and *United States v. Cadena*, 585 F.2d 1252, 1260–61 (5th Cir.1978).

▆ One minor point of departure we have with the magistrate, is his report's language which asserts, "But principles of international law are not applied to protect the rights of individuals, but of foreign sovereigns." *See* Magistrate's Report and Recommendation, p. 5.

Although we agree with the magistrate's conclusion that defendants do not have standing to raise this particular violation of international law, we find his choice of language overly broad. Other courts have found that individuals do have standing to enforce principles of international law, apart from a foreign sovereign's right to assert such principles. *See generally Filartiga v. Pena–Irala*, 630 F.2d 876, 884–85 (2nd Cir.1980) (plaintiffs, citizens of Paraguay, alleging wrongful death of son through torture by defendant, former police official in Paraguay, acting under color of official authority, had right under Alien Tort Statute, 28 U.S.C. § 1350, to assert fundamental right under international law to be free from torture). *See also* Joseph Modeste Sweeney Et al., *The International Legal System: Cases and Materials*, Ch. 9, p. 619 (2nd ed. 1981) ("It has been suggested that the violation of the human rights of an alien can be vindicated at the international level through diplomatic protest by the injured individual's state, or through the processes of international arbitration or adjudication put in motion by the individual's state. The *recent developments in human rights law* under the aegis of the United Nations *have emphasized that*, either by the growth of international law or by convention, *an individual's substantive rights may be claimed by him against even his own state*.") (emphasis added).

Our disapproval of the magistrate's specific language in no way indicates disapproval with his ultimate conclusion that the defendants lacked standing to raise the international law claim, which we adopt as our own.

## DOMESTIC LAW

Defendants' motion to suppress was grounded on the argument that the Coast Guard's and the U.S. naval ship's actions violated international law. In co-defendants' Wilman Franco and Buelvas–Julio's

"Opposition To U.S. Magistrate's Report And Recommendation," these co-defendants assert that defendants are not claiming that the U.S. violated international law by illegal interception of a foreign vessel in the high seas, but that the "United States failed to comply with its own laws by not obtaining a waiver or consent of the Venezuelan government with full knowledge of what they were consenting to or waiving objection to." *See* Co-defendants' Opposition, p. 4.

█ Co-defendants characterization of the content of their prior motion to suppress is erroneous. Their earlier motion failed to cite any U.S. statute or regulation that the U.S. allegedly failed to comply with. Defendants' motion to suppress specifically alleged that the "United States did not acquire jurisdiction over the ARPON in accordance with *international law* and the Convention on the High Seas and therefore, the subsequent search and seizure was illegal." *See* Defendants' motion, p. 2 (emphasis added). It appears that defendants raised the issue of federal law violations for the first time at the suppression hearing. *See* U.S. Opposition to Co-defendants' Objections, p. 3–4. Since the defendants did not brief the issue of domestic law violations in their motion to suppress below, we need not consider it. Notwithstanding, we are exercising our discretion to entertain it, and will consider it on the merits.

█ We find no violation of domestic law here, which could serve as a basis for granting defendants' motion to suppress. By defendants' own admission, the Coast Guard did not board the ARPON until after receiving a SNO from the Venezuelan government. We find that the Coast Guard's actions fully complied with applicable U.S. law.

The Maritime Drug Law Enforcement Act is codified at 46 U.S.C. App. § 1903. It is the amended and recodified version, effective November 10, 1986, of 21 U.S.C. § 955a, and was adopted "to liberalize the documentation requirements for proving a foreign nation's SNO." *United States v. Leuro–Rosas,* 952 F.2d 616, 619 (1st Cir. 1991). 46 U.S.C. App. § 1903(a) provides that:

> It is unlawful for any person on board a vessel of the United States, *or on board a vessel subject to the jurisdiction of the United States,* or who is a citizen of the United States or a resident alien of the United States on board any vessel, to knowingly or intentionally manufacture or distribute, or to possess with intent to manufacture or distribute, a controlled substance.

46 U.S.C. App. § 1903(a) (emphasis added).

46 U.S.C. App. § 1903(c)(1)(C) defines a "vessel subject to the jurisdiction of the United States" as:

> (C) a vessel registered in a foreign nation where the flag nation has consented or waived objection to the enforcement of United States law by the United States;

46 U.S.C. App. § 1903(c)(1)(C).

46 U.S.C. App. § 1903(d) deals with standing to challenge the jurisdiction of the U.S. under this section of the statute. 46 U.S.C. App. § 1903(d) states that:

> A claim of *failure to comply with international law* in the enforcement of this chapter *may be invoked solely by a foreign nation,* and a failure to comply with international law shall not divest a court of jurisdiction or otherwise constitute a defense to any proceeding under this chapter.

46 U.S.C. App. § 1903(d).

The government alleges that since the Coast Guard obtained a SNO prior to boarding the ARPON, that the ARPON is subject to U.S. jurisdiction under 46 U.S.C. App. § 1903(c)(1)(C). The U.S. further asserts that defendants' stated claims in their motion to suppress, all deal with the U.S.'s alleged failure to comply with international law, and under 46 U.S.C. App. § 1903(d) only foreign nations have standing to invoke such claims.

Co-defendants in their objections to the magistrate's report attempt to circumvent these arguments by asserting that their case is similar to that of *Maynard,* where the First Circuit found that defendants had

standing to challenge U.S. jurisdiction for violation of its own laws. *Maynard*, 888 F.2d at 927. We agree with the magistrate that *Maynard* is not applicable to the facts of this case.

The First Circuit in *Maynard* specifically found that defendants there were claiming that the Coast Guard failed to comply with U.S. law, and that those defendants had not "invoked the 'Convention of the High Seas.' or any other international law, as the basis for their jurisdictional challenge." *Id.* By contrast, the basis of defendants' motion to dismiss here is expressly grounded in alleged violations of international law and the Convention on the High Seas. *Maynard* is also inapplicable since there the Coast Guard claimed that the ship was stateless and failed to obtain a SNO before searching the vessel, while ignoring clear evidence of the ship's nationality. *Id.*, 888 F.2d at 923–24. Here, by contrast, defendants admit that the Coast Guard confirmed the Venezuelan nationality of the ship and got a SNO from Venezuela before boarding the ARPON.

Defendants assert that the SNO is null and void because the U.S. failed to give the Venezuelan Government full information before Venezuela decided whether or not to grant the SNO. Defendants cite no case law in support of this argument. We find that having obtained a valid SNO prior to boarding the ARPON, such ship was under U.S. jurisdiction, and the search of it and subsequent seizure of the marijuana was justified under both U.S. and international law. *See Hensel*, 699 F.2d at 27–28 (grant of permission by flag state to search vessel is an exception to international law rule of freedom of navigation); and *United States v. Dominguez*, 604 F.2d 304, 308 (4th Cir. 1979) (grant of permission to board and search by Commonwealth of Bahamas prior to Coast Guard search of vessel means search valid under U.S. law). *See also Leuro–Rosas*, 952 F.2d at 618–21; *Peterson*, 812 F.2d at 493; and *Reeh*, 780 F.2d at 1546–47.

Our Circuit and other circuit courts have even approved searches where no consent was obtained from the foreign government until after the search was conducted, or in some cases where no formal consent was ever given. *Hensel*, 699 F.2d at 28 (Although Coast Guard had no prior consent to search vessel, Honduras arguably ratified the search by its failure to protest the seizure); *Reeh*, 780 F.2d at 1543, 1547 (Great Britain legitimately ratified the Coast Guard decision to search its vessel by withdrawal of its right to object several days after search took place); and *Dominguez*, 604 F.2d at 308 (although Bahamas government's confirmation of its prior permission to seize its ship contained wrong registration number, ship's seizure was still valid where Bahamas did not protest seizure).

The Eleventh Circuit has found that as long as there is a foreign national's consent to the search by the date of trial, the search is validated. *Reeh*, 780 F.2d at 1547. Since the Coast Guard here obtained a SNO prior to boarding the ARPON, and there has been no showing that the Venezuelan government has contested the validity of the SNO it previously granted, we find that the ARPON was under U.S. jurisdiction and the search was valid under U.S. law.

In accordance with the above, this court FINDS that the motion for suppression of evidence and/or dismissal of the indictment must be, and is hereby DENIED.

SO ORDERED.